NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Jonathan SANTORO and Katherine SANTORO,

    Plaintiffs,

v.

UNIQUE VACATIONS, INC., et al.,

    Defendants.

Civ. No. 10-3281

OPINION

THOMPSON, U.S.D.J.

    This matter is before the Court upon Defendants' Unique Vacations, Inc. ("Unique") and Sandals Resorts International, Ltd. ("SRI") (collectively, "Defendants") Motion for Reconsideration. (Doc. No. 65). Plaintiffs Jonathan Santoro and Katherine Santoro ("Plaintiffs") oppose Defendants' motion and cross-move to amend the complaint. (Doc. No. 66). The Court has decided the motions based on the written submissions of the parties and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated below, both motions will be denied.

## BACKGROUND

    The facts of this case are more fully summarized in the Court's Opinion of April 22, 2014 granting Defendants partial summary judgment (the "April 22 Opinion"). (Doc. No. 51, Partial Summ. J. Op.). Plaintiffs are a married couple who booked a trip to the Sandals Regency La Toc Golf Resort & Spa in St. Lucia ("Sandals Regency La Toc") for their honeymoon. (Doc. No. 4, Am. Compl., at ¶ 23; Doc. No. 51, Partial Summ. J. Op. at 1). Unique is a Delaware corporation

that provides marketing services for a number of hotels doing business under the trade name "Sandals;" SRI provides management services to those same hotels. (Doc. No. 51, Partial Summ. J. Op. at 2). Through a travel agent, Plaintiffs purchased an all-inclusive package from Unique for their stay at the Sandals Regency La Toc. (Doc. No. 4, Am. Compl., at ¶ 23). Included with this package was a transportation voucher, which Plaintiffs were instructed to present upon arrival at the Hewanorra International Airport in St. Lucia to a Sandals representative, who would then assist them to a vehicle that would transport them to the Sandals Regency La Toc. (*Id*. at ¶¶ 14-15). Plaintiffs followed these instructions after arriving in St. Lucia and were led by a Sandals representative named Karan Alexander ("Alexander") to a taxi operated by Defendant Vallins Don C. Jean ("Jean"), who was not an employee of either Unique, Sandals, or the Sandals Regency La Toc. (Doc. No. 51, Partial Summ. J. Op. at 2). This taxi was either owned by Jean or Defendant Southern Taxi Association ("STA"). (*Id*. at 3). While Jean was driving Plaintiffs from the airport to the Sandals Regency La Toc, he fell asleep, which led to the vehicle's running off the road and the Plaintiffs' being injured. (*Id*. at 3-4).

Before embarking on their honeymoon, Plaintiffs had received an invoice from Unique. (*Id.* at 2-3). This invoice contained the following waiver:

> **Limitation of Damages:** Unique Vacation, SRI, any hotel or hotel management company, their affiliates, subsidiaries, directors, officers, and employees, shall not be liable to guest in any circumstances for: (A) any personal injuries or property damage arising out of or caused by any act or omission on the part of any air carrier or grand transportation carrier; (B) emotional distress, mental suffering, or psychological injury of any kind; or (C) any consequential, incidental, punitive, or exemplary damages.

(*Id*. at 3).

On December 13, 2013, Defendants moved for summary judgment on all of Plaintiffs' claims. (Doc. No. 37, Defs.' Mot. Summ. J.). In their brief supporting this motion, Defendants

argued that judgment should be granted in their favor on Plaintiffs' negligence claim because it was undisputed that Defendants did not own, operate, manage, or have control over STA, nor was Jean employed by Defendants, and thus Defendants could not have been the proximate cause of Plaintiffs' injuries. (Doc. No. 37-5, Defs.' Summ. J. Br. at 5). On December 31, 2013, Plaintiffs filed an opposition to Defendants' summary judgment motion and made a cross-motion for partial summary judgment. (Doc. No. 43, Pls. Opp'n and Mot. Partial Summ. J.). In their brief, Plaintiffs focused not on whether Jean had the apparent authority to act as an agent of Defendants, as they had claimed in the 2010 Amended Complaint (Doc. 4, Am. Compl. at ¶ 13), but rather focused on whether Alexander was an agent of Defendants. (Doc. No. 43, Pls. Opp'n and Mot. Partial Summ. J. at 4-8).

By an order and opinion issued on April 22, 2014, the Court rejected Plaintiffs' negligence claim because (1) Plaintiffs had not pointed to any evidence showing that Defendants had any "role in the ownership, operation, or management of the vehicle in which Plaintiffs traveled" or that Defendants had employed or exercised any control over Jean, and (2) because the exculpatory clause contained in the invoice for the trip was enforceable against Plaintiffs under *Slotnick v. Club ABC Tours, Inc.*, 430 N.J. Super. 59 (Law Div. 2012). (Doc. No. 51, Partial Summ. J. Op. at 5-6). The only claim on which the Court did not grant Defendants summary judgment was a claim for negligent misrepresentation. (*Id*. at 8-9). Trial was scheduled to commence on this single claim on November 17, 2014.

The first attorney who had represented Plaintiffs before this Court was Karim Arzadi of the Law Offices of Karim Arzadi in Perth Amboy, New Jersey. (Doc. 40, Consent Order of Substitution). On December 17, 2013, attorney Donald Joworisak filed a Consent Order of Substitution along with a cover letter explaining to the Court that he would be representing

Plaintiffs going forward and that the name of the firm "The Law Offices of Karim Arzadi" was being changed to "Joworisak & Associates, LLC." (*Id.*). Mr. Joworisak signed Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, and he appeared before the Court for Plaintiffs at oral argument on the summary judgment motion on February 19, 2014. (Doc. 43, Pls. Opp'n and Mot. Partial Summ. J.; Doc. No. 50). However, on November 14, 2014—the Friday before trial was set to begin on Monday, November 17—the Court was advised in a telephone conference that Vincent Glorisi of the Vincent R. Glorisi Law Offices in Old Bridge, New Jersey, would be representing Plaintiffs at trial. Mr. Glorisi was listed in the pretrial order but not as a separate law firm. He has never entered an appearance for his law firm. During the telephone conference call, Mr. Glorisi informed the Court for the first time that he wished to pursue a vicarious liability theory against Defendants, by which he would argue that Defendants should be held liable for the injuries caused by Jean because Jean had the apparent authority to act as agent of Defendants, and that therefore Defendants should be vicariously liable for his negligence under respondeat superior.

  At the end of the first day of trial, after the jury had been sworn and Plaintiffs had presented the bulk of their case as to Defendants' liability, Mr. Glorisi made a motion to amend the complaint to make his vicarious liability claim against Defendants. The next day, the Court indicated that it would deny Plaintiffs' motion to amend the complaint because there was no new evidence that had arisen to justify amending the complaint once trial had begun. At the end of the day on Wednesday, in a conference in chambers with counsel for Plaintiffs and Defendants, Mr. Glorisi informed the Court that Plaintiffs intended to dismiss their complaint altogether, as they did not feel that they had been able to convincingly prove the case for negligent

misrepresentation and did not wish to expend the resources to call their expert medical witnesses to present the case for Plaintiffs' damages.

On Thursday morning, the Court informed the parties both initially in chambers and on the record in the courtroom that it had further considered: Plaintiff's motion to amend the complaint in the light of the vicarious liability theory that Mr. Glorisi had expounded; the evidence that Plaintiffs had offered at trial; and the claims that Plaintiffs had stated against Defendants in their 2010 Amended Complaint (Doc. No. 4). Taking those factors into consideration, the Court determined that in the interest of allowing Plaintiffs the opportunity to have as complete an airing of their case as justice required, that the motion to amend the complaint should: (1) be interpreted as a motion for reconsideration of the Court's April 22, 2014 Order and Opinion granting summary judgment on Plaintiffs' negligence claim, as Plaintiffs' had claimed Defendants were vicariously liable for Jean's negligence in the 2010 Amended Complaint, and thus the Complaint did not need to be amended; and (2) that this motion should be granted so as to allow Plaintiffs to present this claim to a jury, as there was enough evidence supporting the vicarious liability theory that summary judgment should not have been granted. Though Defense counsel protested that the Court should not grant a motion for reconsideration *sua sponte*, the Court corrected Defense counsel and stated very clearly that it was not, in fact, granting a motion *sua sponte* but that it was responding to the motion made by Mr. Glorisi on the record on November 17, 2014.

The following day, November 19, Defendants made a motion for a mistrial (Doc. No. 59), which the Court granted (Doc. No. 64). This case is now set to begin a new trial on February 3, 2015. On December 3, 2014, Defendants filed the present motion for reconsideration of the Court's November 19, 2014 granting of Plaintiff's motion for

reconsideration. (Doc. No. 65). On December 22, 2014, Mr. Joworisak, once again representing Plaintiffs,[1] filed an opposition to Defendants' motion for reconsideration. (Doc. No. 66). Along with this opposition, Plaintiffs also filed a motion to amend the complaint to substitute Ciceron Management Company, Ltd. for a fictitiously named defendant. (*Id.*). Defendants oppose this amendment. (Doc. No. 70).

## **STANDARDS**

### I.     Motion for Reconsideration

The Third Circuit has held that "The purpose of a motion for reconsideration is 'to correct manifest errors of law or fact or to present newly discovered evidence,'" and that, accordingly, motions for reconsideration should be granted only where (1) there has been a change in controlling law; (2) there is new evidence; or (3) there is a need to correct a "clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (quoting *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

### II.    Motion to Amend

Federal Rule of Civil Procedure 15(c) governs when a pleading may be amended after the statute of limitations has passed. *See Padilla v. Twp of Cherry Hill*, 110 F. App'x 272, 276 (3d Cir. 2004). The statute of limitations passed long before Plaintiffs filed their motion to amend on December 22, 2014, as the accident giving rise to this cause of action occurred in July of 2008 (Doc. 4, Am. Compl. at ¶ 12) and the statute of limitations for personal injuries in New Jersey is two years (N.J.S.A. 2A:14-2.2(a)). Rule 15(c)(1)(A) allows an amendment to a complaint when the amendment relates back to the original pleading:

> (1) An amendment to a pleading relates back to the date of the original pleading when:

---

[1] It is the Court's understanding that Mr. Glorisi will represent Plaintiffs again at trial, though he needs to file his appearance on the record.

>   (A) the law that provides the applicable statute of limitations allows relation back.

New Jersey's statute of limitations for personal injuries does not discuss relating back, but under New Jersey's fictitious party rule, N.J.R. 4:26-4, an amendment relates back to the original pleading where the plaintiff named a fictitious defendant in the original pleading and later seeks to amend the complaint to substitute a specific, named defendant for the fictitious defendant. To be able to invoke this rule, however, a plaintiff must show that she "exercised due diligence to ascertain defendant's true name before and after filing the complaint." *Monaco v. City of Camden*, 366 F.App'x 330, 334 (3d Cir. 2010) (quoting *DeRienzo v. Harvard Indus.*, 357 F.3d 348, 353 (3d Cir. 2004).

## ANALYSIS

**I.      Defendants' Motion for Reconsideration**

The Court will deny Defendants' motion for reconsideration because the Court believes that its decision to grant Plaintiff's motion for reconsideration on November 19, 2014 was fairly decided and Defendants have not shown any new evidence, any change in controlling law, or any clear error of law.

As discussed above, the Court granted Mr. Glorisi's motion for reconsideration of the granting of summary judgment on Plaintiff's negligence claim because Mr. Glorisi persuaded the Court that there were material issues of fact which should have gone to the jury. While it would have been better for the apparent authority and negligence issues to have been placed firmly before the Court before trial began, it nonetheless became clear to the Court that Plaintiffs—Mr. and Mrs. Santoro—deserved to have this claim heard by the jury, and that to deny them that opportunity would have been a manifest injustice. Accordingly, the Court granted the motion for reconsideration, reinstating that claim.

As the Court noted in its April 22 Opinion, in order to establish vicarious liability under an apparent authority theory, a party must "establish that: (1) the appearance of authority has been created by the conduct of the alleged principal and not solely by the conduct of the putative agent; (2) a third party has relied on the agent's apparent authority to act for a principal; and (3) the reliance was reasonable under the circumstances."  (Doc. No. 51 at 6-7) (quoting *Mayflower Transit, LLC v. Prince*, 314 F.Supp. 2d 362, 374 (D.N.J. 2004)).  The doctrine of apparent authority exists so that a party cannot escape liability where there is no contractual relationship between a principal and a tortfeasor but the principal's behavior has misled a third party into believing that the tortfeasor was acting under the authority of the principal as its agent or employee; as such, the question of whether an apparent authority relationship exists is very factually intensive.  *Mayflower Transit LLC*, 314 F.Supp. 2d at 374.  After Plaintiffs' presentation at trial, the Court came to appreciate fully that Defendants had sold Plaintiffs an all-inclusive vacation package that included a voucher for ground transportation from the airport to the resort, and that the marketing materials for the package and the transportation voucher could have led Plaintiffs to believe that the person who would drive them from the airport to the resort would be a Sandals employee.  The Court concluded that there were material issues of fact as to whether the driver Jean was under the apparent authority of Defendants.  *See Casey v. Sanborn's Inc. of Tex.*, 478 S.W.2d 234, 236–39 (Tex. Civ. App. 1972) (finding that plaintiffs had made the prima facie showing of liability against a Texas travel agency under the doctrine of respondeat superior by showing that they had been injured by the negligent conduct of a Mexican driver who had been contracted with by a Mexican travel service which was held out by the Texas travel agency as "our men in Mexico," even though the Texas travel agency had no contractual relationship with the Mexican driver.)

Another basis for the Court's grant of summary judgment to the Defendants on the negligence claim was the exculpatory clause contained in the invoice sent to Plaintiffs. While the Court cited *Slotnick v. Club ABC Tours, Inc.*, 430 N.J. Super. 59 (Law Div. 2012) as having established the precedent in New Jersey that such clauses will generally be found enforceable, the Court concludes now that *Slotnick* is distinguishable from the present case. First, in *Slotnick*, the Defendant who was found to be protected by the exculpatory clause was Club ABC Tours, Inc., ("Club ABC") which was the entity with whom the plaintiff had booked her trip to Egypt. *Slotnick*, 430 N.J. Super. at 69–70. However, the party that allegedly injured plaintiff was the cousin of a tour guide employed by Al Thuraya Travel & Tours ("T3"), which was hired to provide travel services for plaintiff and others on a Jordan add-on tour from the Egypt tour by STI Travel, LLC, which itself had been hired by Club ABC to act as tour operator for the Egypt tour. *Id*. at 62–64. The event at which plaintiff was injured was an optional excursion from the Jordan add-on tour for dinner in the T3 tour guide's family cave. *Id*. at 64. Thus, there were many layers of privity between Club ABC and the tortfeasor. Under those circumstances, it is more reasonable to allow exculpatory clauses, which are generally disfavored under New Jersey law and are subjected to close judicial scrutiny. *See Stelluti v. Casapenn Enter., LLC*, 203 N.J. 286, 303 (2010). Here, it is plausible that the driver Jean was acting under the apparent authority of Sandals, and that he was executing a duty that Defendants had marketed to Plaintiffs and for which Plaintiffs had paid a premium to Defendants. In *Slotnick*, by contrast, the plaintiff had not purchased the excursion for the dinner in the cave in Jordan from Club ABC. *Slotnick*, 430 N.J. Super. at 64. Thus, the factual situation here is significantly distinguishable from the situation presented in *Slotnick*.

More to the point, however, the New Jersey Appellate Division has held that an "exculpatory agreement does not and should not insulate dangerous conduct that is more culpable than ordinary negligence or carelessness" (i.e., gross negligence). *Stelluti v. Casapenn Enter., LLC*, 408 N.J. Super. 435, 457 n.6 (N.J. Super. Ct. App. Div. 2009) (*aff'd*, 203 N.J. 286 (2010)). Here, a reasonable jury might reasonably have found that Jean was grossly negligent in causing the car crash. Defendants would be liable for the damages resulting from such negligence if the jury were also to find that Jean acted under the apparent authority of Defendants. Thus, the Court concludes that the Defendants' exculpatory clause was insufficient as a basis for the grant of summary judgment.

## II.   Plaintiffs' Motion to Amend

To avail itself of New Jersey's fictitious party rule, which allows a party to amend a complaint to add a defendant where it had named a fictitious defendant originally, the party must have acted with diligence before and after filing the complaint. *Monaco,* 366 F.App'x at 334. Though Plaintiffs did name "Sandals Regency La Toc Golf Resort & Spa in St. Lucia Management (fictitious name)" as a defendant in its complaint in 2010, there is no evidence that Plaintiffs acted with any diligence at all in the almost four and half years between the filing of the complaint and the filing of the instant motion. Apparently, nothing was done to determine the identity of the management company and add it as a party, even though there are several indications in the record that Circeron Management Company, Ltd. was the party to be named in the complaint. *See DeRienzo v. Harvard Indus., Inc.*, 357 F.3d 348, 354–55 (3d Cir. 2004) (collecting cases where the fictitious party rule has been applied). Accordingly, Plaintiffs' motion will be denied.

## **CONCLUSION**

For the foregoing reasons, both Defendants' and Plaintiffs' motions are denied. An appropriate order will follow.

 

 /s/ Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.